UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

                            Debtor.

:  Case No. 08-13555-JMP
:  Chapter 11
:
:  (Jointly Administered)
:

----------------------------------------------------------------

KA KIN WONG, et al., On Behalf of
Themselves and All Others Similarly Situated,

                         Plaintiffs,

      vs.

HSBC USA, INC., et al.,

                         Defendants.

:  Adversary Proceeding
:  Case No. 09-01120-JMP
:
:
:
:
:
:
:
:
:
:
:

----------------------------------------------------------------

KA KIN WONG, et al., On Behalf of
Themselves and All Others Similarly Situated,

                         Appellants,

      vs.

HSBC USA, INC., et al.,

                         Appellees.

:  United States District Court
:  Southern District of New York
:  Bankruptcy Appeal No. 10-CV-00096-WHP
:  (Related to 10-CV-00017-WHP)
:
:
:
:
:
:
:
:

---------------------------------------------------------------- x

PLAINTIFFS-APPELLANTS' BRIEF IN SUPPORT OF APPEAL FROM BANKRUPTCY
COURT ORDER GRANTING LEHMAN DEFENDANT'S
MOTION TO DISMISS COMPLAINT

479849_1

# TABLE OF CONTENTS

**Page**

I.    BASIS OF APPELLATE JURISDICTION ...................................................................1

II.   ISSUES PRESENTED AND STANDARD OF REVIEW ...................................................1

    A.    Issues Presented ........................................................................................1

    B.    Standard of Review.....................................................................................2

III.  STATEMENT OF THE CASE............................................................................3

    A.    Nature of the Case and Facts Relevant to Issues Presented......................................3

        1.    Pre-Default Facts: The Two Ways Investors Could Lose Their Savings..................................................................4

        2.    Post-Default Facts: LBSF Interferes with Collateral Distribution to Plaintiffs, Manufacturing a Third Way Investors May Lose Their Savings..................................................................7

    B.    Course of Proceedings ........................................................................8

IV.   DISPOSITION OF THE CASE............................................................................9

    A.    The Bankruptcy Court's Rulings Regarding LBSF ................................................9

    B.    Related Rulings Demonstrate the Attack on Plaintiffs' Property Continues and Intensifies ..............................................9

    C.    The Bankruptcy Court's Consideration of LBSF's Mathematical Errors and Mistaken "Settlement" Representations.........................................11

V.    SUMMARY OF ARGUMENT ..............................................................................12

VI.   ARGUMENT ..............................................................................................13

    A.    Plaintiff Trust Beneficiaries Have Standing to Sue LBSF Directly .....................13

        1.    LBSF Persuaded the Court It Is Not a "Dog-Leg" Defendant.................13

        2.    Plaintiffs Have Standing to Sue LBSF as a "Party" to the Trust .............15

        3.    The Contracts Act 1999 Does Not Affect Plaintiffs' Standing.................16

        4.    Plaintiffs Have Standing to Sue LBSF Under New York Law, Where It Is Headquartered ........................................................18

- i -

**Page**

B.   Even if LBSF Were a "Dog-Leg" Defendant, Plaintiffs Have Standing to
Sue LBSF Derivatively .......................................................................................19

1.   "Special Circumstances" Are Present and Allow Plaintiffs to Sue
LBSF Derivatively Under English Law........................................................19

2.   It Is Unnecessary for Plaintiffs to Sue LBSF Derivatively Under
New York Law but They Should be Permitted Leave to Amend if
Necessary .....................................................................................................23

C.   Plaintiffs Have Standing to Bring Constructive and Resulting Trust Claims
Against LBSF...........................................................................................................23

D.   Plaintiffs May, but Need Not, Sue LBSF Derivatively .........................................24

VII.   CONCLUSION AND RELIEF REQUESTED .................................................................24

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alsop Wilkinson v. Neary*,
    [1996] 1 W.L.R. 1220, 1225 (Ch.)......................................................................13, 15, 16, 22

*Backer v. Levy*,
    82 F.2d 270 (2d Cir. 1936)..........................................................................................23

*Beck v. Manufacturers Hanover Trust Co.*,
    218 A.D.2d 1 (N.Y. App. Div. 1st Dep't 1995)...........................................................19

*Brooklyn Legal Servs. Corp. B v. Legal Servs. Corp.*,
    462 F.3d 219 (2d Cir. 2006).....................................................................................2, 16

*City of New York v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008)........................................................................................24

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..........................................................................................12

*Feetum v. Levy*,
    [2005] EWCA Civ. 1601 (C.A.)..............................................................................17, 18

*Golden Budha Corp. v. Canadian Land Co., N.V.*,
    931 F.2d 196 (2d Cir. 1991)........................................................................................24

*Gregson v. HAE Trustees Ltd.*,
    [2008] EWHC 1006 (Ch.)...................................................................................*passim*

*Hayim v. Citibank NA*,
    [1987] 1 A.C. 730 (P.C.)..............................................................................................20

*In re Bennett Funding Group*,
    146 F.3d 136 (2d. Cir. 1998).........................................................................................2

*JPMorgan Chase Bank, N.A. v. Charter Communications Operating, LLC
(In re Charter Communications)*, Chapter 11, No. 09-11435 (JMP),
    2009 Bankr. LEXIS 3609 (Bankr. S.D.N.Y. Nov. 17, 2009)......................................22

*In re Field*,
    [1971] 1 WLR 555.......................................................................................................21

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005)..........................................................................................19

**Page**

*Kaster v. Modification Sys., Inc.*,
    731 F.2d 1014 (2d Cir. 1984) ........................................................................................3

*Kelley v. Prudence Co.*,
    259 N.Y.S. 59 (N.Y. Sup. Ct. 1932) ..........................................................................18

*LNC Invs. v. First Fid. Bank, N.A.*,
    173 F.3d 454 (2d Cir. 1999) ........................................................................................19

*Manning v. Miller Music Corp.*,
    174 F. Supp. 192 (S.D.N.Y. 1959) .............................................................................18

*Oliver Sch. v. Foley*,
    930 F.2d 248 (2d Cir. 1991) ...................................................................................3, 4, 5

*Perpetual Trustee Co. Ltd. v. BNY Corporate Trustee Servs. Ltd.*,
    [2009] EWHC 1912 (Ch.) ..............................................................................10, 16, 17

*Perpetual Trustee Co. Ltd. v. BNY Corporate Trustee Servs. Ltd.*,
    [2009] EWCA Civ. 1160 (C.A.) .............................................................10, 13, 16, 17

*Re Lehman Brothers Int'l (Europe) (in administration) (No. 2)*,
    [2009] EWCA Civ. 1161 (C.A.) .................................................................................17

*Roberts v. Gill & Co.*,
    [2008] EWCA Civ. 803 (C.A.) ........................................................................ *passim*

*S & K Sales Co. v. Nike, Inc.*,
    816 F.2d 843 (2d Cir. 1987) ........................................................................................18

*Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co.,*
    *Kommanditgesellschaft v. Navimpex Centrala Navala*,
    29 F.3d 79 (2d Cir. 1994) .......................................................................................3, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................................2

*Tinsley v. Milligan*,
    [1994] 1 A.C. 340, 371 (H.L.) ....................................................................................24

*Torres v. $36,256.80 United States Currency*,
    25 F.3d 1154 (2d Cir. 1994) ........................................................................................24

- iv -

Page

*United States v. Cambio Exacto, S.A.,*
    166 F.3d 522 (2d Cir. 1999)....................................................................2, 20

*Westdeutsche Landesbank Girozentrale v. Islington LBC,*
    [1996] A.C. 669, 705 (H.L.) ...........................................................................24

*Whitney v. Citibank, N.A.,*
    782 F.2d 1106 (2d Cir. 1986)...........................................................................19

*Wiwa v. Shell Petroleum Dev. Co. of Nig., Ltd.,*
    335 Fed. Appx. 81 (2d Cir. 2009).................................................................3, 24

**STATUTES, RULES AND REGULATIONS**

28 USC
    §158(a)(1) ...........................................................................................................1

Federal Rules of Civil Procedure
    Rule 12(b)(1)........................................................................................................2
    Rule 12(b)(6)....................................................................................................2, 8
    Rule 23.1.......................................................................................................12, 23

Contracts Act 1999
    §1.4....................................................................................................................10
    §7(1)..................................................................................................................17
    §19....................................................................................................................10

Trustee Act of 2000 ............................................................................................17

479849_1

## I.    BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 8001(a) and 28 USC §158(a)(1). Plaintiffs in the above-captioned matter on behalf of themselves and all others similarly situated ("Plaintiffs") timely filed notices of appeal. *See* DN-48[1]; *see also* FRBP 8002(a) (notice of appeal to be filed within 14 days from entry of final order), from final orders entered by the United States Bankruptcy Court for the Southern District of New York (Hon. Peck, J.) (the "Bankruptcy Court"). DN-47 (dismissing all claims against Lehman Brothers Special Financing Inc. ("LBSF") with prejudice).

## II.    ISSUES PRESENTED AND STANDARD OF REVIEW

### A.    Issues Presented

This appeal presents the following issues: (1) Whether the Bankruptcy Court erred as a matter of law or fact in dismissing the Class Action Complaint for Declaratory and Injunctive Relief and Damages (the "Complaint") on the basis that Plaintiffs lack standing? (2) Whether the Bankruptcy Court erred as a matter of law or fact in dismissing the Complaint without leave to amend? (3) Whether the Bankruptcy Court erred as a matter of law or fact in dismissing the Complaint without leave to correct the Complaint by naming the proper corporate entity as a defendant? (4) Whether the Bankruptcy Court erred as a matter of law or fact in dismissing the Complaint with prejudice?

---

[1]    This brief designates materials included in the Special Appendix as "SA-___." Numbered entries in the Bankruptcy Court's docket are referenced as "DN-___," by their designation number set forth in Appellants' Statement of Issues to Be Presented on Appeal and Designation of Contents of the Record, a copy of which is attached at SA-1 for ease of reference.

479849_1

### B.    Standard of Review

On appeal, the Bankruptcy Court's findings of fact are reviewed under the clearly erroneous standard while its legal conclusions are reviewed *de novo*. *In re Bennett Funding Group*, 146 F.3d 136, 138-39 (2d. Cir. 1998); FRBP 8013.

Defendant LBSF moved to dismiss Counts I-III of the Complaint pursuant to Rule 12(b)(6). DN-9. The Bankruptcy Court converted LBSF's Rule 12(b)(6) motion into Rule 12(b)(1) motion, finding the court lacked subject matter jurisdiction over Counts I-III of the Complaint on the basis that Plaintiffs lack standing to sue LBSF. SA-4 at 23:8-24:3 (referencing Rule 12(b)(1)). Standing is a question of law that is subject to *de novo* review. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) ("The issues raised on the standing question here are legal and therefore require *de novo* review.").[2]

As with the analysis of a motion to dismiss pursuant to Rule 12(b)(6), when reviewing a motion to dismiss under Rule 12(b)(1) for lack of standing, courts "presume the general factual allegations embrace those facts necessary to support the claim" and "are constrained not only to accept the truth of the plaintiffs' jurisdictional allegations, but also to construe all reasonable inferences to be drawn from those allegations in plaintiffs' favor." *Brooklyn Legal Servs. Corp. B v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d Cir. 2006); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (under Rule 12(b)(6) courts must "accept all factual allegations in the complaint as true").

The Bankruptcy Court applied English law to hold that Plaintiffs lack standing to sue LBSF directly or derivatively. SA-4 at 25:2-4, 26:22-23. Foreign law questions are reviewed *de novo*.

---

[2]    Emphasis is added and citations and internal quotations omitted unless otherwise noted.

*Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 29 F.3d 79, 81 (2d Cir. 1994) ("foreign law issues [are subject] to *de novo* review.")

The Bankruptcy Court dismissed the Complaint without leave to amend. This decision is reviewed for abuse of discretion. *Kaster v. Modification Sys., Inc.*, 731 F.2d 1014, 1018 (2d Cir. 1984). A "court abuses its discretion in dismissing an action 'when its decision rests on an error of law . . . .'" *Wiwa v. Shell Petroleum Dev. Co. of Nig., Ltd.*, 335 Fed. Appx. 81, 84 (2d Cir. 2009). In addition, "[w]here the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Sch. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991).

## III.    STATEMENT OF THE CASE

### A.    Nature of the Case and Facts Relevant to Issues Presented

Plaintiffs are investors who purchased bonds formally called "Minibonds" or "Notes" that defaulted by September 15, 2008, and who have wrongfully been deprived of the collateral held in trust to protect their investment following default. Defendant LBSF is actively working to prevent the distribution of this collateral – called the "Saphir Notes" by LBSF – and to destroy its value completely.

Plaintiffs' Complaint alleges that pursuant to well-settled law, approximately $1.6 billion in bond collateral held in trust for their benefit belongs to Plaintiffs and is not property of the bankruptcy estate. ¶3.[3] LBSF forced Plaintiffs to take action to protect the sole property held in

---

[3]    Unless otherwise indicated, paragraph references ("¶__" or "¶¶__") are to the Complaint.

trust for their benefit, the Saphir Notes.  This property was purchased with Plaintiffs' own money, not LBSF's.  ¶66.

By their Complaint, Plaintiffs seek, *inter alia*, a declaratory judgment that the Saphir Notes belong to them, and not the bankruptcy estate.  Plaintiffs provide the following additional summary of facts regarding the Minibonds before they defaulted, and after they defaulted.

### 1.   Pre-Default Facts: The Two Ways Investors Could Lose Their Savings

Pacific International Finance Limited ("Pacific Finance") issued the Minibonds in series, in an aggregate amount of $1.6 billion dollars.  ¶3.  In brief, the issuer took Plaintiffs' money, bought collateral, and settled a trust by giving that collateral to its corporate affiliate HSBC Bank USA, N.A. ("HSBC Bank USA") to back up its promises.  HSBC Bank USA is headquartered in New York City.  SA-1, Exhibit A at 1.

The Bankruptcy Court described the structure of this transaction as follows:

(1)    there was "a sale of notes by Pacific Finance to individual noteholders, including the Plaintiffs."  SA-4 at 21:2-4;

(2)    "In connection with the issuance of such notes, Pacific Finance entered into a swap agreement with LBSF in order to provide a source of income to pay interest on the notes."  *Id.* at 21:20-22;

(3)    "Pacific Finance also purchased notes from Saphir Finance PLC [the 'Saphir Notes'] to serve as collateral for its obligations to LBSF under the swap agreement and to the noteholders under the notes."  *Id.* at 21:23-25; and

(4)    "HSBC Bank USA, N.A. serves as trustee with respect to the Saphir Notes."  *Id.* at 21:25-22:1.

Because the court found that HSBC Bank USA serves as trustee for Plaintiffs as noteholders and as trustee for LBSF as swap counterparty, Plaintiffs have standing to sue LBSF regarding the deposition of trust property.  These relationships are illustrated at Exhibit A hereto.

- 4 -

Plaintiffs allege additional undisputed facts concerning these transactions. To start, Pacific Finance sold its securities to retail investors, most of whom are Hong Kong residents. ¶5. These investors faced substantial risks. There were two ways they could lose their money.

The first way investors could lose all of their money had to do with the swap agreement described above. Under this swap, Pacific Finance promised to pay LBSF in the event that any one of a few "blue chip" debt securities defaulted. ¶45. If certain prescribed negative events affected these securities before LBSF defaulted – such as a default, credit ratings downgrade or restructuring – LBSF would "win" its bet and investors would lose all of their money.

The second way investors could lose all of their money is related to the collateral described above, the Saphir Notes. These notes are a type of derivative security called single-name, synthetic collateralized debt obligations. ¶63. The "single-name" feature refers to the fact that Pacific Finance had these particular securities custom made by LBSF for the purpose of supporting its obligations to Plaintiffs. *Id.*, ¶¶63-64. This collateral was supposed to have the "AAA" characteristics associated with securities backed by the full faith and credit of the United States Government, such as U.S. Treasury Bills. ¶51. In reality, the Saphir Notes exposed the Minibonds to yet another gamble that (a) a pre-determined percentage of high-risk securities (b) within a larger pool of securities would (c) experience a default, credit ratings downgrade or restructuring. ¶63.

The economic features of all of these transactions are similar to insurance. ¶57. LBSF was in essence buying protection against certain bad economic events occurring during the term of the insurance. The *New York Times* succinctly reported that the Minibond "[i]nvestors were effectively paying for Lehman to insure its own portfolio." DN-33, Ex. 2. LBSF would "win" all of the Minibond investors' money if the insured risks materialized before the credit insurance termed out.

Thus, LBSF stood in an exactly opposite economic position to the Minibond investors in a zero-sum, winner-take-all game.  ¶63.

Investors were not appropriately compensated for these risks for one major reason: LBSF was able to make one-sided bets.  ¶78.  It is true that the issuer of the Minibonds, Pacific Finance, was at all relevant times legally owned and controlled by defendant HSBC Holdings plc, whose wholly owned subsidiary, HSBC Bank (Cayman) Limited, supplied the individual defendants as directors of Pacific Finance.  ¶¶11, 31.  And it is true that Pacific Finance, in turn, transferred the Saphir Notes to its affiliate HSBC Bank USA to manage on trust for Plaintiffs' benefit.  ¶6.  In theory these entities were "independent" from LBSF and could invest and manage Plaintiffs' capital at arm's-length from LBSF.

According to senior officials from HSBC Holdings plc itself, however, Pacific Finance "only did filing and administrative work" (¶52), and was "a creature of Lehman's design" in reality.  ¶82, at 28.  The trustee admitted "the key is that we are and were appointed by Lehman Brothers as the Trustee."  *Id.*  Together, these entities and the other HSBC defendants ("HSBC") were responsible for raising, investing and managing over $1.6 billion worth of the Plaintiff retail bank depositors' money, but abdicated their responsibilities and turned complete control of the Minibond proceeds over to LBSF.  ¶77.  LBSF was able to negotiate with itself; thus it is no surprise that virtually all risk was shifted to Plaintiffs and away from LBSF.  ¶78.

Among the many risks LBSF managed to shift to Plaintiffs at deep discounts, LBSF kept one for itself – namely, the risk the Lehman itself would become a credit risk.  Lehman provided necessary credit support in the transactions.  ¶46.  LBSF and HSBC could have hired any third party to provide this credit support, but they chose Lehman.  And when Lehman filed for bankruptcy on September 15, 2008, LBSF's one-sided, below-market credit insurance termed out.  ¶¶70-71.  LBSF

lost. Under the terms of the deal, Lehman's default should have allowed Plaintiffs to escape the risks that LBSF and HSBC foisted upon them through Pacific Finance (¶66), **but LBSF wants more**.

LBSF is apparently dissatisfied with the wildly mispriced risks it shifted to Plaintiffs and wildly disproportionate benefits it achieved thanks to Plaintiffs' investment capital. LBSF lost its one-sided bets, but is taking another swipe at Plaintiffs' funds.

### 2. Post-Default Facts: LBSF Interferes with Collateral Distribution to Plaintiffs, Manufacturing a Third Way Investors May Lose Their Savings

In late 2008, HSBC Bank USA was in the process of repaying Plaintiffs, when, all of sudden, LBSF told it to stop, take no action and "cease and desist" from doing anything more to repay Plaintiffs. *See* DN-30, Ex. 5; *see also* ¶93 (LBSF wrongfully interferes with collateral distribution). *See* Ex. B attached hereto.

The HSBC defendants confirmed these facts in their own affidavit:

> [On November 25, 2008, a] US law firm representing the liquidator of Lehman sends a "cease and desist" letter to the trustee for the Minibonds, to the effect that, according to the US Bankruptcy Code, **the trustee's actions** since 15 September might be invalid; and that **the trustee might not lawfully realize the collateral and pay the money to Minibond investors,** and should refrain from taking any further action.

DN-6, Ex. G at 6. The "liquidator of Lehman" referenced above is actually defendant LBSF. That November 25, 2008 "cease and desist" letter orders HSBC Bank USA not to pay Plaintiffs. DN-30, Ex. 5. It is addressed to Plaintiffs' trustee, HSBC Bank USA "as trustee." *Id.* There, LBSF warns the trustee that the trust fund "may be subject to the automatic stay provisions of the Bankruptcy Code" and further threatens "we hereby demand that you immediately cease and desist from taking any further actions." *Id.*

LBSF has no right to attack Plaintiffs' trust, and order HSBC Bank USA to "cease and desist" from repaying Plaintiffs. As noted above, HSBC itself says it "might not **lawfully** realize the

- 7 -

collateral and pay the money to the Minibond investors."  DN-6, Ex. G at 6.  Whether LBSF's

actions are lawful is a merits question.  For ***standing*** purposes, LBSF's naked assertions in a two

page letter do not transform Plaintiffs' property rights to $1.6 billion worth of collateral into

meaningless abstractions.

      LBSF's wrongful actions cannot be taken lightly.  It invoked the power of the U.S. Courts to

enforce the U.S. Bankruptcy Code, directly interfered with Plaintiffs' fiduciary relationship with

HSBC Bank USA and has wreaked financial hardship on real people who are in no way responsible

for the business decisions that led to Lehman's September 15, 2008 demise and consequent default

by Pacific Finance.

      Plaintiffs have standing to bring this dispute before a U.S. Court.

### B.    Course of Proceedings

      On May 27, 2009, LBSF filed its motion to dismiss the Counts I-III of the Complaint

pursuant to Rule 12(b)(6) for failure to state a claim, or, in the alternative, to abstain or stay the

action.  DN-9.

      On May 27, 2009, LBSF moved to dismiss Counts I-III of the Complaint pursuant to

Rule 12(b)(6).  DN-9.  LBSF submitted the Declaration of Gerard McCormack ("Professor

McCormack") in support of its argument concerning Plaintiffs' ability to sue LBSF as a matter of

English law.  *Id.*  LBSF maintains Professor McCormack is an expert of English law.  Plaintiffs were

not permitted to conduct any discovery, and thus have not deposed Professor McCormack.

      On August 10, 2009, Plaintiffs responded to LBSF's motion.  DN-30.  Plaintiffs

demonstrated that the Complaint adequately plead facts sufficient to support Plaintiffs' standing to

sue LBSF directly; in the alternative, Plaintiffs requested leave to amend the Complaint to sue LBSF

derivatively.  *Id.*  In response to Professor McCormack, Plaintiffs provided the Bankruptcy Court

with the declaration of Fidelis Oditah, QC ("Professor Oditah"). DN-31. Professor Oditah is an English law expert.

On September 15, 2009, LBSF filed its reply, repeating its arguments that Plaintiffs as beneficiaries could only sue LBSF derivatively because LBSF is a third party to the HSBC Bank USA trust, and providing a supplemental declaration by Professor McCormack. DN-41.

## IV.    DISPOSITION OF THE CASE

### A.    The Bankruptcy Court's Rulings Regarding LBSF

The Bankruptcy Court heard oral arguments on October 28, 2009 (SA-3), and held a status conference on November 18, 2009 (SA-4), to provide its opinion concerning LBSF's motion to dismiss. As to LBSF, the Bankruptcy Court dismissed the Counts I-III of the Complaint with prejudice on the basis that Plaintiffs lack standing to sue LBSF. SA-2.

The Court found Plaintiffs could not sue LBSF directly under the English "dog-leg" defendant doctrine set forth in *Gregson v. HAE Trustees Ltd.*, [2008] EWHC 1006 (Ch.) ("*Gregson*") (SA-4 at 25:3-7), and that it would be impossible for Plaintiffs to allege facts sufficient to satisfy the "special circumstances" test that English courts apply to determine whether a trust beneficiary may sue derivatively a "dog-leg" or third-party to a trust. *Id.* at 27:1-4 (citing *Roberts v. Gill & Co.*, [2008] EWCA Civ. 803 (C.A.) ("*Roberts*").

As a consequence, the Bankruptcy Court rejected Plaintiffs' request to amend the Complaint to sue LBSF derivatively, if necessary. SA-4.

### B.    Related Rulings Demonstrate the Attack on Plaintiffs' Property
### Continues and Intensifies

LBSF has made a multi-prong attack on Plaintiffs' trust. First, it claims that it has a senior claim to the Saphir Notes. DN-9 at 17. Even if true, this fact is irrelevant because LBSF is only

entitled to payments if it "wins" the insurance bets described above.  It did not win (¶66), LBSF's allegedly senior claim is worthless (¶71), and LBSF has not rebutted this point.

Second, LBSF has attacked the terms of the property held by HSBC Bank USA in trust – the Saphir Notes – in its "cease and desist" letter.  LBSF continues this attack through litigation in this case, and in related but different cases in England and before the Bankruptcy Court.  Those cases involve separate but similar series of Saphir Notes to those held in trust by HSBC Bank USA.

In the English cases, LBSF attempted to convince the English courts to rewrite the terms of the Saphir Notes in a manner that favors LBSF and harms Plaintiffs.  The two applicable English decisions are the trial court's judgment at *Perpetual Trustee Co. Ltd. v. BNY Corporate Trustee Servs. Ltd.*, [2009] EWHC 1912 (Ch.) ("*Perpetual I*") and the Court of Appeal's decision upholding the trial court's judgment at [2009] EWCA Civ. 1160 (C.A.) ("*Perpetual II*").

In those cases LBSF sought to persuade the English courts to void the manner in which the Saphir Notes are redeemed even though LBSF purchased "little" or none of the those notes.  *Perpetual* II, ¶61.  The provisions at issue are collectively called the "Noteholder Priority" provisions, and both courts rejected LBSF's efforts to rewrite those provisions.  *Perpetual I*, ¶¶14, 45 (provisions enforceable); *Perpetual II*, ¶¶61-75 (same, upholding *Perpetual II*).

LBSF has had better luck before the Bankruptcy Court in New York, where the actual owners of the Saphir Notes – like HSBC Bank USA (who has legal ownership) and Plaintiffs (who have beneficial ownership) are not present.  After Plaintiffs filed this appeal, on January 25, 2010, the Bankruptcy Court reached exactly the opposite conclusion as the English courts in *Perpetual I* and *Perpetual II.  See Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited*, Adversary Proceeding No. 09-01242 (JMP), Memorandum Decision Granting Motion for Summary Judgment and Declaring Applicable Payment Priorities (S.D.N.Y. Jan. 25, 2010) (the

- 10 -

"January 25, 2010 Opinion").  The court described the terms of the Saphir Notes, found in favor of

LBSF and concluded that the court would need to cooperate with the English courts to reconcile

their conflicting decisions.  *Id.* at 24.

Thus, LBSF is working on an accelerated timetable to destroy the sole piece of property that

can be used to redeem Plaintiffs' Minibonds.  Meanwhile, LBSF has raised several red herrings to

distract the Bankruptcy Court from this objective, including a demonstrably false assertion that 99%

of the Minbond investors have settled their claims.  SA-4 at 19:2-7.

### C.    The Bankruptcy Court's Consideration of LBSF's Mathematical Errors and Mistaken "Settlement" Representations

While not part of its legal analysis, the Bankruptcy Court appears to have been persuaded by

LBSF's representation that "ninety-nine percent" of the Minibond investors are included in a

"settlement" organized by government authorities in Hong Kong, where Pacific Finance sold most of

the Minibonds.  *Id.* at 19:6; *see also* ¶45.  LBSF was mistaken.

The Complaint alleges approximately 33,000 investors purchased Minibonds.  ¶40.  In

addition, HSBC filed documents with the Bankruptcy Court stating there were "34,000 [Minibond]

investors" (DN-6, Ex. F, ¶13.4), and that at most "25,000 customers" are even "eligible" to

participate in the "settlement" LBSF referenced.  DN-39, Ex. C.  HSBC's reports further stated that

"19,780 customers have responded to the repurchase offers, of whom 19,576 customers or 99.0%

have accepted the offers."  *Id.*  LBSF cited this "99%" figure to the Bankruptcy Court, but this

"99%" in fact represents approximately 60% of the 33,000 investors referenced in the Complaint, or

57% according to HSBC's numbers.

Whatever the exact percentage is, the fact of the matter is that ***at least eight thousand***

(33,000 – 25,000) investors – or enough people to fill Lincoln Center's Alice Tully Hall more than

three times over – are not even eligible to participate in any partial redemption.  This number is more

- 11 -

than sufficient to satisfy Rule 23's numerosity requirement. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (40 is presumptively sufficient).

Moreover, those investors who are eligible to receive partial payments from the banks that distributed the Minibonds have "settled" nothing with HSBC Bank USA or LBSF. In fact, these investors retained the right to collect additional recoveries "based on the redemption value of underlying collateral," namely, the Saphir Notes *in this case*. DN-38 at 8. In addition, eligible customers are still able to participate in this class action because they only "waive[d] their claims (if any) against the relevant Distributing Bank and its officers or employees" (DN-39, Ex. B, ¶25), and not against the trustee or LBSF, who are strangers to this arrangement.

More importantly from defendants' perspectives, 100% of the Minibonds remain outstanding, remain in default and remain fully collateralized by the trust administered by HSBC Bank USA. Plaintiffs have standing to challenge LBSF's mounting legal attacks on this trust.

## V.    SUMMARY OF ARGUMENT

The Bankruptcy Court erred in finding Plaintiffs lack standing to sue LBSF as a matter of English law. This finding is reviewed *de novo*. *See transport*, 29 F.3d at 81.

The threshold question is whether Plaintiffs have standing to sue LBSF directly as a matter of English law. If, and only if, Plaintiffs lack standing to sue LBSF directly does the question of whether Plaintiffs have standing to sue LBSF derivatively even arise.

The Bankruptcy Court determined Plaintiffs lacked standing to sue LBSF directly based upon the "dog-leg" defendant doctrine articulated by *Gregson*. SA-4 at 25:2-7. Because the Bankruptcy Court accepted LBSF's factual allegation that it is – in addition to Plaintiffs – a beneficiary of the Minibonds trust, *Gregson* is irrelevant. Given LBSF's status as a co-beneficiary of this trust, the dispute between LBSF and Plaintiffs in this case is a classic "beneficiary dispute," which requires

- 12 -

the trustee "to remain neutral" while the rival co-beneficiaries of the trust are left "to fight their battles." *Alsop Wilkinson v. Neary*, [1996] 1 W.L.R. 1220, 1225 (Ch.); *accord Perpetual II*, ¶2 (LBSF and the plaintiffs as rival trust beneficiaries litigated a dispute while "[t]he Trustee adopted a neutral position on the appeal."). Even if LBSF is "dog-leg" defendant or stranger to Plaintiffs' trust, Second Circuit rules and English law compel the conclusion that Plaintiffs have standing to LBSF derivatively. Plaintiffs have alleged their trustee is in breach of its fiduciary duty to repay them: that breach, standing alone and with other breaches, are sufficient to confer derivative standing. The outcome is the same under New York law.

The Bankruptcy Court did not explain why Plaintiffs lack standing to bring their constructive and resulting trust claims. Plaintiffs have standing to bring them against LBSF.

Finally, the Bankruptcy Court's conclusion that it would be "futile" to allow Plaintiffs leave to amend the Complaint must be set aside because it is based upon these and other errors. Plaintiffs have standing to use LBSF under English and New York law.

## VI.    ARGUMENT

### A.    Plaintiff Trust Beneficiaries Have Standing to Sue LBSF Directly

#### 1.    LBSF Persuaded the Court It Is Not a "Dog-Leg" Defendant

LBSF's argument that Plaintiffs lacking standing to sue LBSF depends on LBSF's being deemed a "third party" to the HSBC Bank USA trust. But LBSF convinced the court that it is not a third party. Plaintiffs that have standing to sue LBSF directly as a co-beneficiary.

In support of its arguments concerning English law, LBSF submitted the declaration of Professor McCormack. DN-9, Ex. 2. Professor McCormack contended that Plaintiffs failed to state a claim under English law on the theory that trustees are generally required to initiate claims against a ***third party*** such as LBSF. *Id.*, ¶13. He asserted that when such a stranger to the trust is alleged to

- 13 -

479849_1

have "failed to perform its obligations to the trustee, then only the trustee can sue in respect of that alleged wrong" done by that legal stranger. *Id.*

Professor McCormack analogized defendant LBSF to the ***directors*** of a corporate trustee who, unlike the trustee proper or other beneficiaries, are legal strangers to the trust under the so-called "dog-leg" doctrine set forth in *Gregson*. *Gregson* generally requires a trustee to take action against "dog-leg" defendants or trust strangers directly. *Id.*, ¶¶13-14.

In support of these legal arguments, LBSF made a number of factual concessions and several factual allegations. For example, LBSF conceded that HSBC Bank USA is Plaintiffs' trustee; conceded that Plaintiffs' Minibonds (issued by Pacific Finance) are secured obligations; conceded that those obligations are secured by the Saphir Notes; and conceded that the Saphir Notes are held in trust by HSBC Bank USA as trustee for Plaintiffs' benefit; but alleged that LBSF is a co-beneficiary of the trust holding the Saphir Notes.[4]

LBSF's English law expert, Professor McCormack, agreed with LBSF. He concluded that the Minibond investors are beneficiaries of the HSBC Bank USA trust, and that "[a]t the minibond level, the collateral is notes issued by Saphir." DN-41, Ex. 3, ¶5. Professor McCormack asserted:

---

[4]    *See* DN-9 at 6 (Plaintiffs buy Minibonds from Pacific Finance: "At the minibond level, Pacific Finance sold its notes to noteholders in Hong Kong such as, allegedly, the Plaintiffs."); *id*. at 25 (Plaintiffs are beneficiaries of the HSBC Bank USA trust: "[A]t the Minibond Level . . . there is already a trust holding the collateral [Saphir Notes] for Plaintiffs' benefit."); *id*. at 8 (Plaintiffs' Trustee is HSBC Bank USA: "HSBC USA was appointed by Pacific Finance as trustee over the collateral securing Pacific Finance's obligation to pay . . . its noteholders [*i.e.*, Plaintiffs]."); *id*. at 7-8 (Plaintiffs' Trustee holds Saphir Notes for Plaintiffs: "With the money obtained through issuing the [Minbonds], Pacific Finance purchased certain securities . . . issued by Saphir Finance [*i.e.*, the Saphir Notes, and these] securities served as collateral for Pacific Finance's obligations . . . ."); *id*. at 7 (LBSF argues it is a co-beneficiary of the trust: "[The HSBC Bank USA trust] was established by Pacific Finance, and LBSF ***and*** the noteholders of Pacific Finance were required to obtain payment solely through that trust.").

"*The minibond investors* are entitled to security rights, junior to those of LBSF, at the 'retail,' or Pacific Finance, level. According to the relevant trust deeds they *are among the list of designated beneficiaries*, *in addition to LBSF* . . . ." *Id.*, ¶8.

In this way, LBSF conceded that Plaintiffs are beneficiaries of the trust holding the Saphir Notes, but contended LBSF was a "senior" beneficiary while the Minibond investors are all "junior" beneficiaries. The Bankruptcy Court accepted LBSF's arguments as facts. *See* SA-4 at 25:19 (referring to Plaintiffs as "junior"); *id.* at 21:23-22:1 (LBSF has benefit of Saphir Notes due to swap). Having made such a determination, it follows that LBSF is not a "dog-leg" stranger to the HSBC Bank USA trust. Therefore, *Gregson* does not deprive Plaintiffs' standing as the Bankruptcy Court found.

### 2.    Plaintiffs Have Standing to Sue LBSF as a "Party" to the Trust

Unlike *Gregson's* "dog-leg" rule governing disputes by trust beneficiaries against third parties, a different rule applies to disputes involving trust beneficiaries. Such "a dispute with one or more beneficiaries as to the propriety of any action which the trustees have taken or omitted to take or may or many not take in the future," is called a "a beneficiaries dispute" under English law. *Alsop*, [1996] 1 W.L.R. at 1224. In a beneficiaries dispute, "the duty of the trustee" HSBC Bank USA "is to remain neutral" while the rival beneficiaries "fight their battles." *Id.* at 1225.

Given the Bankruptcy Court's findings, a classic "beneficiaries dispute" exists between LBSF and Plaintiffs. The opposing parties are Plaintiffs as so-called "junior" beneficiaries and LBSF as "senior" beneficiaries. On the one hand, LBSF has engaged in self-help, ordering HSBC Bank USA "as trustee" of the Saphir Notes to "immediate[ly] cease and desist from taking any further actions" to repay Plaintiffs. DN-30, Ex. 5. On the other hand, Plaintiffs claim the Minibond collateral – *i.e.*, the Saphir Notes – "could be distributed to Plaintiffs but for defendant [LBSF's]

improper assertion of an ownership interest" in the Saphir Notes.  ¶3.  Similarly, LBSF makes the factual allegation that it has a "Superior Interest in any Collateral" – *i.e.*, the Saphir Notes – "at the Minbond Level," and that "Plaintiffs Have No Claim" to the Saphir Notes.  DN-9 at 17.  At the same time, Plaintiffs allege this collateral is "not property of [LBSF's] estate" (¶4), and that the Minibond investors are entitled to all of it following default.  ¶71; *see also* Ex. B.  Plaintiffs' allegations must be accepted as true (*Brooklyn Legal Servs.*, 462 F.3d at 226), and LBSF has never explained what value, if any, its "superior" interest actually has.

What is clear is that LBSF and Plaintiffs have rival beneficial interests in the trust property.  The reason why English law permits "rival claimants" such as LBSF and Plaintiffs "to fight their battles" between each other is because trustees such as HSBC Bank USA are prohibited from "prefer[ing] one class of beneficiaries" over another.  *Alsop*, [1996] 1 W.L.R. at 1225.[5]  This commonsense rule was applied in *Perpetual I* and *Perpetual II* where "[t]he Trustee adopted a neutral position on the appeal."  *Perpetual II*, ¶2.  There, LBSF vigorously litigated its claims against the trust beneficiaries, and *vice-versa*.  Because LBSF is a "co-beneficiary," Plaintiffs have standing to sue LBSF as a matter of English law.  The English contracts statute cited by the Bankruptcy Court does not eliminate this or any other right.

### 3.    The Contracts Act 1999 Does Not Affect Plaintiffs' Standing

The Bankruptcy Court mistakenly determined the English Contracts (Rights of Third Parties) Act 1999 (the "Contracts Act 1999") prevents Plaintiffs from suing LBSF.  SA-4 at 24:20-25:7.  This ruling is erroneous because, as Professor Oditah explained, the language of the Contracts Act

---

[5]    As set forth in Plaintiffs-Appellants' Brief in Support of Appeal from Bankruptcy Court Order Granting HSBC Defendants' Motion to Dismiss Complaint, HSBC Bank USA as trustee is in fact "preferring" LBSF over Plaintiffs, in breach of its obligation to remain neutral.

1999 itself states that it "does ***not*** affect any right or remedy of a third party that exists or is available apart from this Act." SA-5, ¶39; *see also* Contracts Act 1999 §7(1).

Numerous authorities demonstrate that Professor Oditah's reading of the Contracts Act 1999 is correct. *See, e.g.*, *Gregson* (applying general trust law and Trustee Act 2000 in context of trust dispute, not contract law); *Re Lehman Brothers Int'l (Europe) (in administration) (No. 2)*, [2009] EWCA Civ. 1161, ¶¶67, 68, 69 (C.A.) (contract law does not defeat or displace trust beneficiaries' property rights); the Trustee Act of 2000 (demonstrating beneficiaries have rights apart from the Contracts Act 1999). *Perpetual I* and *Perpetual II* further demonstrate that the Contracts Act 1999 did not "affect" or void any remedy trust beneficiaries have.

In *Perpetual I* and *Perpetual II*, the transaction documents included substantially identical Contracts Act 1999 provisions as those cited by the Bankruptcy Court in this case, but those provisions did not prevent the contractual "non-party" plaintiffs in that case (*see Perpetual I*, ¶2), from asserting their claims. *See* DN-51, Ex. A at 30 (§19) (relevant provision in *Perpetual I* and *Perpetual II*); *compare with* DN-6, Ex. A at 3 (§1.4) (cited by the Bankruptcy Court at SA-4 at 24:20-25:7). As noted above, the transaction documents are before the Bankruptcy Court because LBSF filed a parallel proceeding and submitted those documents to the Bankruptcy Court, and later used the same documents in support of its trial positions in England. DN-51 (LBSF adversary complaint attaching relevant documents); DN-52 (letter explaining LBSF will submit related motion as evidence to English court); SA-6 at 110 (permitting LBSF's "highly unusual" premature motion).

In addition to these authorities, Professor Oditah explained that the "right to seek declaratory relief is not constrained by privity of contract," because that right exists apart from the Contracts Act 1999. SA-5, ¶40. Professor Oditah cited *Feetum v. Levy*, [2005] EWCA Civ. 1601 (C.A.) ("*Feetum*") as one example. SA-5, ¶29. In that case, plaintiffs were members of a limited

liability partnership who sought declaratory relief concerning a debenture the partnership had entered into with a third party ("CV Ltd."). *Id.*, ¶¶1, 2, 23-24. CV Ltd. later used the debenture to appoint receivers over the partnership. *Id.* The receivers then purported to impose certain obligations on the partnership's members based on the terms of the debenture. *Id.*, ¶¶25-26.

The circumstances in this case are more severe. Plaintiffs in this case are beneficiaries of the HSBC Bank USA trust, which has been instructed by LBSF not to pay Plaintiffs the principal and interest to which they are legally entitled. The *Feetum* court found that plaintiffs' declaratory relief claims against CV Ltd. were not derivative under similar circumstances given the direct impact a decision would have on their individual tax liability. *Feetum*, ¶80. Plaintiffs allege in this case that LBSF is preventing the payment of funds to them. ¶3. These claims are direct as a matter of English law and need not be brought derivatively.

Nor did the court of appeal in *Feetum* require plaintiffs to bring their declaratory relief claims as breach of contract claims under the Contracts Act 1999. Instead, *Feetum* held that declaratory relief claims should ***not*** "be refused on the footing that the claimants are seeking declaratory relief as to the effect of a contract to which they are not parties." *See* SA-5, ¶29 (quoting *Feetum*, ¶81). *Feetum* is consistent with the language of the Contracts Act 1999: it "does not affect any right or remedy of a third party that exists or is available apart from this Act." SA-5, ¶39.

**4.    Plaintiffs Have Standing to Sue LBSF Under New York Law, Where It Is Headquartered**

Whether characterized as a third party or not, New York courts permit Plaintiffs to sue LBSF under these circumstances. *See, e.g.*, *Kelley v. Prudence Co.*, 259 N.Y.S. 59 (N.Y. Sup. Ct. 1932) (plaintiff bondholders sue issuer and other interested corporations); *Manning v. Miller Music Corp.*, 174 F. Supp. 192 (S.D.N.Y. 1959) ("It is well settled that a fiduciary who refuses to bring suit against a third party for the benefit of his *cestui* abuses his trust."); *S & K Sales Co. v. Nike, Inc.*, 816

- 18 -

F.2d 843, 847-48 (2d Cir. 1987) (well settled that beneficiaries can sue a party where, as here, that party participates in trustee's breach); *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986) (same); *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (same); *LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d 454, 462 (2d Cir. 1999) (trustee has duty "to act prudently to safeguard the assets of the Trust" in post-default context (citing *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 13 (N.Y. App. Div. 1st Dep't 1995) ("The trustee . . . must, as prudence dictates, exercise [his contractually conferred rights and powers] in order to secure the basic purpose of any trust indenture, the repayment of the underlying obligation."")).

Thus, because LBSF is interfering with the distribution of the collateral to which Plaintiffs are entitled, Plaintiffs have standing to sue LBSF has a matter of New York law, where both LBSF and the trustee HSBC Bank USA are headquartered.

### B.    Even if LBSF Were a "Dog-Leg" Defendant, Plaintiffs Have Standing to Sue LBSF Derivatively

#### 1.    "Special Circumstances" Are Present and Allow Plaintiffs to Sue LBSF Derivatively Under English Law

Assuming, *arguendo*, LBSF is a "dog-leg" defendant, Plaintiffs have standing to sue LBSF derivatively.   The correct legal standard governing derivative claims under English law in this context was articulated by *Roberts*.   This is the only case the Bankruptcy Court cited concerning English derivative actions, aside from *Gregson*.   SA-4 at 27:1-4.

*Roberts* involved a dispute between a trust beneficiary and a ***third party*** to the trust at issue. In particular, the plaintiff in *Roberts* tried to bring claims against attorneys who advised the trustee. *Roberts*, ¶8.   Again, this type of case is irrelevant to the question of whether Plaintiffs can sue LBSF because the Bankruptcy Court determined LBSF was a beneficiary of the trust as noted above.

As to the "special circumstances" English courts require for a beneficiary to sue a third party, the *Roberts* court reviewed relevant precedent and at paragraph 40 of its opinion adopted the rule set forth in *Hayim v. Citibank NA*, [1987] 1 A.C. 730 (P.C.). Professor Oditah quoted this rule in full:

> "These authorities demonstrate that a beneficiary has no cause of action against a third party save in special circumstances **which embrace a failure, excusable or inexcusable**, by the trustees in the performance of the duty owed by the trustees to the beneficiary to protect the trust estate or to protect the interests of the beneficiary in the trust estate."

SA-5, ¶14 (quoting *Hayim*, [1987] 1 A.C. at 748). LBSF's expert cited this rule as well. DN-41, Ex. 3, ¶22.

This legal standard conclusively establishes that a derivative suit may be brought against third parties to a trust by beneficiaries of the trust in several circumstances "which embrace" a failure of the trustee to perform its duties, protect trust property or the interests of the trust beneficiaries. Whatever greater or lesser circumstances may satisfy the "special circumstances" test, these circumstances are sufficient on the face of the rule.

Under this rule, Plaintiffs have standing to sue as a matter of law. As Professor Oditah explained at paragraph 20 of his declaration: "[T]he Minibonds have defaulted and one of the duties that a trustee," HSBC Bank USA, "would be expected to perform is to take steps to safeguard and realize the collateral," the Saphir Notes, "for the benefit of those entitled, including the Minibond investors." SA-5, ¶20. The trustee is in breach of this and many other duties. *Id.* LBSF cannot contradict these breaches because they are assumed true at the pleading stage as a matter of law. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 528 (2d Cir. 1999). However, the Bankruptcy Court ignored these breaches.

Further, the Court applied the wrong legal standard.  The court held that the "mere fact" that a trustee has not filed suit is not a "special circumstance."  SA-4 at 26:24-27:4.  This rule was derived from LBSF's argument at pages 22-23 of its reply brief, where it asserted:

> Indeed, the mere fact that the Trustee has not filed a lawsuit is not a sufficient "special circumstance."  As stated most recently in the case of *Roberts v. Gill & Co.*, [2008] All ER(D) 162, cited by the Plaintiffs' expert: "[i]f it were it would wholly abrogate the rule that special circumstances have to be shown."  *Roberts* (quoting *In re Field*, [1971] 1 WLR 555).

DN-41 at 22-23.

LBSF, in turn, made several errors in adducing its "mere fact" rule from *Roberts* and *In re Field*, [1971] 1 W.L.R. 555 (Ch.).  LBSF ignored the *Roberts* court's specific holding that a beneficiary has standing to sue where, as here, the trustee is in breach of its duties.

Next, when *Roberts* cited *In re Field*, the *Roberts* court made it clear that "mere" failure to sue is not a special circumstance alone "[h]owever, in very many cases, the fact that the derivative claim will enable an asset that could not otherwise be realised to be realised will be a ***very powerful consideration*.**  *Roberts*, ¶42.  The Saphir Notes will not be realized until LBSF's attacks are defeated.  This point is a "very powerful consideration," favoring derivative standing.  *Id.*

Similarly, LBSF ignored *In re Field's* central holding that "special circumstances" include situations where "by reason of conflict of ***interest or duty***, it is impossible or difficult for the personal representatives to sue."  [1971] W.L.R. at 559.  Both types of conflicts are present here.

HSBC has a conflict of interest because the Lehman bankruptcy estate owes it $234 million – HSBC would personally benefit from a ruling against Plaintiffs' interests because over $1.6 billion would transfer to the Lehman estate.  DN-30, Ex. 6.  The fact that $234 million is owed to various HSBC affiliates does not render this conflict vague, as the Bankruptcy Court found (SA-4 at 27:5-9), because "'the financial condition of one affiliate affects the others.'"  January 25, 2010 Opinion

- 21 -

(quoting *JPMorgan Chase Bank, N.A. v. Charter Communications Operating, LLC (In re Charter Communications)*, Chapter 11, No. 09-11435 (JMP), 2009 Bankr. LEXIS 3609, at *67-*68 (Bankr. S.D.N.Y. Nov. 17, 2009)).

In addition, HSBC has a conflict of duty. It owes a duty to LBSF and Plaintiffs "to protect the interests of the beneficiar[ies] in the trust" (*Roberts*, ¶40), but cannot discharge this duty and "remain neutral" (*Alsop*, [1996] 1 W.L.R. at 1225), because LBSF and Plaintiffs are rival beneficiaries with conflicting interests in the same trust property.

These conflicts, coupled with the "very powerful consideration" that the Saphir Notes represent the only trust assets that can be used to redeem Plaintiffs' defaulted bonds are exactly the type of "special circumstances" permitting a derivative suit under English law. *Roberts* itself explained:

> In my judgment, the fair result in the circumstances of the case would have been to give permission to amend to enable [plaintiff] to bring a derivative claim and to leave it to the [third party] solicitors, if so advised, to take out an application to strike the personal claim out.

*Roberts*, ¶45. There, the court did not permit the amendment only because the applicable statute of limitations had passed, which is not an issue in this case. *Id.*, ¶¶35, 48. In other words, on substantially weaker facts than those present here, an English Court of Appeal would have permitted a trust beneficiary to sue a third-party derivatively. The attorneys or solicitors in *Roberts* were allegedly negligent in making sure the trustee followed the terms of the trust. *Id.*, ¶8. In this case, LBSF is actively seeking to destroy the trust property by rewriting the terms of the Saphir Notes, as discussed above, which is the only property held in Plaintiffs' trust to support the repayment of Plaintiffs' bonds.

Even the trustee concedes this point, most recently in its personal "proof of claim" filed in the Lehman bankruptcy. SA-1, Ex. A at 1 (Proof of Claim). Among many other admissions, the

- 22 -

trustee states that the "Noteholder Priority on default of [LBSF] was required by the rating agencies to enable the [Saphir Notes] to be given an AAA rating which made the [Saphir Notes] *eligible* collateral" for the Minibonds. *Id.*, ¶8. The trustee admits that the Saphir Notes (and thus the Minibonds) would never have existed but for the very provisions that LBSF is attacking. Yet HSBC Bank USA continues in breach of its fiduciary duties, preferring to side with a powerful bankrupt investment bank over a group of retail savings depositors in a post-default context. Plaintiffs are not required to sit idly by while LBSF destroys their collateral and prevents the Minibonds' redemption.

While it is not necessary for Plaintiffs to sue LBSF derivatively under English law, they could sue LBSF in this manner if necessary. They could sue LBSF derivatively under New York law as well.

> ### 2. It Is Unnecessary for Plaintiffs to Sue LBSF Derivatively Under New York Law but They Should be Permitted Leave to Amend if Necessary

All that is required under New York law to bring suit in a derivative capacity in a trust context is to "aver a demand upon the executors and trustees to bring suit and a refusal by them to sue." *Backer v. Levy*, 82 F.2d 270, 272 (2d Cir. 1936). Plaintiffs can easily satisfy this standard. Moreover, any such demand is procedurally unnecessary as HSBC faces conflicts of duties and interest, as discussed above, rendering any such demand futile under Rule 23.1. *See* Fed. R. Civ. P. 23.1. Plaintiffs are not required to sue LBSF derivatively, but should be permitted leave to do so in the event the Court finds it necessary.

> ### C. Plaintiffs Have Standing to Bring Constructive and Resulting Trust Claims Against LBSF

The Bankruptcy Court did not explain why Plaintiffs' constructive or resulting trust claims are unavailable to Plaintiffs on the facts of this case. Given LBSF's unconscionable efforts to destroy the Saphir Notes after having taken advantage of Plaintiffs by subjecting their savings

deposits to multiple layers of credit derivatives, Plaintiffs have clearly alleged the elements of constructive and resulting trust claims under English and New York law. *See, e.g.*, *Westdeutsche Landesbank Girozentrale v. Islington LBC*, [1996] A.C. 669, 705 (H.L.) ("Equity operates on the conscience of the owner of the legal interest" and describing this broad claim.); *Tinsley v. Milligan*, [1994] 1 A.C. 340, 371 (H.L.) (in a resulting trust, "[t]he creation of such an equitable interest does not depend upon a contractual obligation"); *Golden Budha Corp. v. Canadian Land Co., N.V.*, 931 F.2d 196, 202 (2d Cir. 1991) ("it appears from the complaint that defendants hold property they should not retain, in good conscience and equity, under the circumstances revealed"); and *Torres v. $36,256.80 United States Currency*, 25 F.3d 1154, 1159 (2d Cir. 1994) (resulting trust appropriate where, as here, beneficial interest is supposed to be held by plaintiff).

There is no legal basis for denying Plaintiffs' **standing** to bring those claims given the fact that LBSF is attempting to destroy Plaintiffs' collateral.

### D.     Plaintiffs May, but Need Not, Sue LBSF Derivatively

Plaintiffs should be permitted leave to sue LBSF derivatively if necessary. The Bankruptcy Court's contrary conclusion should be set aside given the errors of law explained herein. *Wiwa*, 335 Fed. Appx. at 84. In addition, leave to amend is freely given in the Second Circuit. *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 452 (2d Cir. 2008).

## VII.     CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, the Bankruptcy Court's decisions should be reversed.

DATED:  February 3, 2010                    COUGHLIN STOIA GELLER
                                             RUDMAN & ROBBINS LLP
                                            LUKE O. BROOKS
                                            JASON C. DAVIS


                                                 s/ Jason C. Davis
                                            JASON C. DAVIS

100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SPENCER A. BURKHOLZ
CHRISTINA A. ROYCE
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

GENOVESE JOBLOVE & BATTISTA, P.A.
JOHN H. GENOVESE
PAUL J. BATTISTA
DAVID C. CIMO
ROBERT F. ELGIDELY
Bank of America Tower, 44th Floor
100 Southeast Second Street
Miami, FL  33131
Telephone:  305/349-2300
305/349-2310 (fax)

Attorneys for Plaintiffs Ka Kin Wong, Siu Lui
Ching, Chun Ip, Jin Liu, Yin Ying Leung, Lai Mei
Chan and Sing Heung, on behalf of themselves and
all others similarly situated

479849_1



**PRE-DEFAULT**

Investors Lend $1.6 billion to Pacific Finance in Series, Pacific Finance Takes Their Money, Places Swap Bet with LBSF, and Buys $1.6 Billion "Saphir Notes" as Collateral

Pacific Finance Settles Trust: Places 100% of $1.6 billion in Collateral in Trust for Minibond Investors (and, allegedly, LBSF) to Back Up Promises

**Investors**

Minibonds

**Trustee**

HSBC Bank USA, N.A.

**Beneficiaries**

LBSF

Minibond Investors

**Swap**

LBSF

Pacific Finance

Saphir Notes

**Issuer**

**Trust Property**

Exhibit A



**POST-DEFAULT**

Post-Default, HSBC Bank USA Is Required To
(1) Liquidate or Distribute the Saphir Notes to Plaintiffs but
(2) Refuses To Do So While LBSF Wrongfully Interferes with the Distribution and Attacks the Saphir Notes

Exhibit B

479849_1