USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/9/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                            :
KA KIN WONG, et al.,                        :   10 Civ. 0017 (WHP)
                                            :   Appeal from Bankruptcy
        Plaintiffs/Appellants,              :   Case No. 08-13555 (JMP)
                                            :
        -against-                           :   MEMORANDUM & ORDER
                                            :
HSBC USA, INC., et al.,                     :
                                            :
        Defendants/Appellees.               :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                            :
KA KIN WONG, et al.,                        :   10 Civ. 0096 (WHP)
                                            :   Appeal from Bankruptcy
        Plaintiffs/Appellants,              :   Case No. 08-13555 (JMP)
                                            :
        -against-                           :
                                            :
HSBC USA, INC., et al.,                     :
                                            :
        Defendants/Appellees.               :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

Plaintiffs/Appellants Ka Kin Wong and six other noteholders appeal from two orders of the United States Bankruptcy Court for the Southern District of New York (Peck, Bankr. J.) (the "Bankruptcy Court") dated November 23, 2009 and December 3, 2009 dismissing their Class Action Complaint (the "Complaint") with prejudice. While the events giving rise to this adversary proceeding are complicated, two discrete issues are presented on appeal: (1) whether Plaintiffs have standing to sue, and (2) whether amendment of the Complaint would be futile. For the following reasons, this Court affirms in part, reverses in part, and vacates in part

the Bankruptcy Court's orders.

## BACKGROUND

### I. Parties on Appeal

Plaintiffs seek to represent a class of purchasers of structured finance notes—also known as "Minibonds"—between June 16, 2003 and September 15, 2008. (Appellants' Designation of Contents of the Record Designation Number ("DN") 1: Complaint against HSBC, USA, et al. dated Mar. 12, 2009 ("Compl.") ¶ 1.) Plaintiffs brought claims against Pacific International Finance Limited ("Pacific Finance" or the "Issuer"), the issuer of the Minibonds, as well as several other entities and individuals. (Compl. ¶¶ 27-38.) The underlying transactions and relationships among the various entities are opaque.

On appeal, Plaintiffs pursue their claims against only two entities: HSBC Bank USA, N.A. ("HSBC Bank" or the "Trustee"), and Lehman Brothers Special Financing, Inc. ("LBSF"). HSBC Bank is the trustee of collateral securing Pacific Finance's payment obligations to the Minibonds holders and LBSF. In the Complaint, Plaintiffs mistakenly named HSBC Bank's predecessor as trustee, (DN 6 Ex. 2: Affidavit of Song Qun Sworn, Programme Prospectus dated Mar. 12, 2007 at 7), and now appeal the Bankruptcy Court's denial of leave to amend the Complaint to name HSBC Bank. Defendant LSBF is a bankrupt Delaware corporation and a debtor in the underlying bankruptcy proceedings, which involve several Lehman entities (the "Lehman Bankruptcy"). (Compl. ¶¶ 38, 67.)

### II. The Minibonds Program

Plaintiffs seek damages and injunctive relief relating to $1.6 billion in Minibonds

issued by Pacific Finance in separate, but virtually identical, series. (Compl. ¶ 45.) Pacific Finance sold the Minibonds to retail investors located primarily in Hong Kong, and marketed them as "credit-linked" to financially stable companies and backed by AAA-rated collateral. (Compl. ¶¶ 45, 47, 51.) As a consequence of Lehman Brothers Holdings, Inc.'s ("Lehman Brothers") collapse, the Minibonds are now worthless. (Compl. ¶¶ 67-69, 101-04.)

While the Minibonds were issued by Pacific Finance, Lehman Brothers and other Lehman entities designed the Minibonds program. (Compl. ¶¶ 46, 48, 50, 82.) The details of Lehman Brothers' involvement emerged during an inquiry conducted by Hong Kong regulatory authorities. In that proceeding, officers of HSBC Holdings Plc ("HSBC Holdings"), the company at the top of the HSBC pyramid, testified that Lehman Brothers appointed HSBC Bank as trustee of the Minibonds collateral.[1] (Compl. ¶ 82.) Lehman Brothers also compiled the prospectus for each Minibonds series. (Compl. ¶ 82.) Pacific Finance existed only "to issue the [Minibonds]. It [was for] all intents and purposes a creature of Lehman's design . . . . [Pacific Finance was] not an active company . . . and HSBC's role as a Director [was] not an active role . . . ." (Compl. ¶ 82.) Indeed, the Complaint alleges that Lehman Brothers and LBSF, not the Issuer, "selected the collateral" for the Minibonds. (Compl. ¶ 50.)

Pacific Finance secured its obligation to pay interest to the Minibonds holders through two related transactions.[2] First, Pacific Finance purchased notes from Saphir Finance Public Limited Company (the "Saphir Notes"). (DN 9 Ex.1, Ex. B: Tenth Supplemental Trust

---

[1] The Hong Kong testimony in the Complaint does not distinguish among the various HSBC and Lehman entities. At times, it is difficult to discern the specific entity referenced in the testimony.

Deed ("Tenth Deed") at 1.) The Saphir Notes were placed in trust with HSBC Bank as Trustee. (Tenth Deed at 1.) Pacific Finance also executed a credit default swap agreement with LBSF. (Tenth Deed at 1; Compl. ¶ 54.) Under the credit default swap, LBSF agreed to pay Pacific Finance a sum equal to what Pacific Finance owed the Minibonds holders in exchange for the interest earned by Pacific Finance on the Saphir Notes. (Tenth Deed at 15-16.) Because Lehman Brothers and LBSF exercised control over the Minibonds program, Plaintiffs assert that LBSF "negotiate[d] with itself over the essential terms of the swap agreements." (Compl. ¶ 50.)

The Saphir Notes are governed by a principal trust deed and a supplemental trust deed issued for each series of Minibonds. (Compl. ¶¶ 84-85.) These trust deeds and the prospectuses advertising the Minibonds sale set forth the "duties and obligations" of the Trustee and the Issuer. (Compl. ¶¶ 84-87.) The trust deeds contain, inter alia, provisions governing the priority of payment in the event the Saphir Notes are liquidated. (Compl. ¶¶ 84, 90.) The parties disagree about the operation of these provisions and who has priority to the Saphir Notes. Choice of law provisions in the trust deeds provide that they are to be construed under English law. (DN 9 Ex. 1: Principal Trust Deed ("Principal Trust Deed"), Sec. 17(a).) The prospectuses represented that "neither Lehman Brothers Holdings, Inc. nor any of its subsidiaries or affiliates has any equity interest in, or any control over, us [Pacific Finance/HSBC]." (Compl. ¶¶ 84, 87.)

According to the Complaint, Pacific Finance is controlled by HSBC Bank (Cayman) Limited ("HSBC Cayman"). (Compl. ¶ 29.) In turn, HSBC Cayman is controlled by HSBC Holdings. (Compl. ¶ 31.) HSBC Holdings also controls the Trustee's predecessor,

---

[2] Plaintiffs brought claims against other entities and individuals alleging rights to collateral purchased as part of additional transactions. (Compl. ¶¶ 8, 32-37, 110, 118.) Because Plaintiffs do not appeal the Bankruptcy Court's dismissal of these claims, that collateral is not at issue.

HSBC Bank USA.[3] (Compl. ¶ 31.)

Another HSBC entity—HSBC Bank Plc—filed a claim for $234 million in the Lehman Bankruptcy. (DN 30 Ex. 6: Amended Schedule of Assets and Liabilities for Lehman Brothers at 3.) In addition, a Lehman Bankruptcy Examiner's report published after the orders on appeal discloses that HSBC Holdings and Lehman Brothers cooperated extensively during Lehman's collapse to ensure that Lehman Brothers satisfied its obligations to HSBC Holdings. (Report of Anton R. Valukas, Examiner, dated Mar. 11, 2010 at 1321-26.)

III. Procedural History

On October 3, 2008, LBSF filed for bankruptcy. (Counter-Designation of Items To Be Included In Record On Appeal ("C-DN") 10: Supplement to Proof of Claim in Chapter 11 Case of LBSF ¶ 10; Compl. ¶ 67.) Thereafter, LBSF's counsel informed HSBC Bank that any attempt to liquidate the Saphir Notes may be subject to the automatic stay provisions of the United States Bankruptcy Code and demanded the Trustee cease all further action. (DN 30 Ex. 5: Pls.' Opp'n to Def. [LBSF's] Mot. to Dismiss the Compl., Letter dated Nov. 25, 2008.) HSBC Bank complied.

On March 12, 2009, Plaintiffs filed an adversary proceeding in the Bankruptcy Court. Count One of the Complaint seeks a declaratory judgment that the Minibonds collateral is the property of the Minibonds holders, not the bankruptcy estate, based on breaches of contract and fiduciary duty by the Issuer and Trustee. (Compl. ¶¶ 97-108.) Count Two seeks to enjoin LBSF and the Trustee from impairing the Minibonds collateral and requests transfer of the

---

[3] This Court presumes that an amended complaint would include the same allegation.

collateral to the Minibonds holders. (Compl. ¶¶ 109-13.) Count Three seeks a resulting or constructive trust on the Minibonds collateral for the benefit of the Minibonds purchasers. (Compl. ¶¶ 114-21.) Finally, the remaining counts of the Complaint—Counts Four through Thirteen—assert damages claims for breach of contract, breach of fiduciary duty, negligence, unjust enrichment, and aiding and abetting against the Trustee, the Issuer, and the Issuer's directors and parent company. (Compl. ¶¶ 122-89.)

On May 27, 2009, LBSF and HSBC Bank USA each moved to dismiss the Complaint. (DN 5: Notice of HSBC USA, Inc.'s Mot. to Dismiss the [Complaint], Abstain or Stay the Adversary Proceeding; DN 9: Notice of Mot. of [LBSF] for an Order Dismissing the Adversary Compl.)

In a ruling from the bench, Bankruptcy Judge Peck dismissed the Complaint. The Bankruptcy Court dismissed Counts One through Three for lack of standing on three principal grounds. First, relying on the trust deeds and English law, the Bankruptcy Court held that Plaintiffs lack standing to bring a direct claim against Defendants. The relevant provisions of the trust deeds state that "[a] person who is not a party to [the deed] has no right under the Contracts (Rights of Third Parties) Act 1999 [("Contracts Act of 1999")] to enforce any term of [the deed] except and to the extent (if any) that [the deed] expressly provides for such Act to apply to any of its terms." (Principal Trust Deed at 3; Tenth Deed at 3). The Bankruptcy Court held that "[t]hese provisions fit squarely within the tenets of governing English law," which "provides that it is a trustee and not a beneficiary of a trust that is the appropriate party to bring an action on behalf of the trust beneficiaries." (Tr. of Nov. 18, 2009 Hr'g (the "Bankr. Ct. Ruling") at 25.)

Second, the Bankruptcy Court held that it would be futile to allow Plaintiffs to

amend the Complaint to bring a derivative claim on behalf of the Trustee. (Bankr. Ct. Ruling at 26.) Construing English law, the Bankruptcy Court concluded that a trust beneficiary may step into the shoes of the Trustee and sue on its behalf only in special circumstances. (Bankr. Ct. Ruling at 26.) Applying this standard, the Bankruptcy Court reasoned that (i) the "mere fact that the trustee has not filed a lawsuit [seeking to enforce Plaintiffs' right to the Minibonds collateral] is not a sufficient 'special circumstance;'" and (ii) the fact that an HSBC affiliate filed a proof of claim in the Lehman Bankruptcy does not establish that the Trustee is conflicted because "there is no allegation of any actual conflict." (Bankr. Ct. Ruling at 26.)

Third, the Bankruptcy Court concluded that it would be futile to allow amendment of the Complaint to name the proper trustee—HSBC Bank—"for the reasons set forth in this ruling." (Bankr. Ct. Ruling at 22.) However, it is not apparent from the transcript of the ruling what those reasons were.

The Bankruptcy Court also dismissed Counts Four through Thirteen because they were "not related to the debtors' proceedings." (Bankr. Ct. Ruling at 29.) The Bankruptcy Court stated that an adversary proceeding is considered related to a bankruptcy case "if the outcome might have a conceivable [e]ffect on the estate." (Bankr. Ct. Ruling at 28.) After noting that Counts Four through Thirteen "involve tort, breach of contract and breach of fiduciary duty claims against various defendants, none of whom are debtors" in the Lehman Bankruptcy, (Bankr. Ct. Ruling at 27), the Bankruptcy Court held that "[i]nasmuch as Counts [Four] through [Thirteen] comprise actions governed by foreign law between two or more non-debtors, such claims, regardless of the outcome, will not affect the debtor's bankruptcy cases. . . . Resolution of these claims will have no [e]ffect on the rights of debtors or creditors in the debtors'

bankruptcy cases, nor will it have any [e]ffect on the debtors' estates." (Bankr. Ct. Ruling at 29.)

## DISCUSSION

### I. Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions de novo. Fed. R. Bankr. P. 8013; In re Vouzianas, 259 F.3d 103, 107 (2d Cir. 2001); In re Bennett Funding Grp., Inc., 146 F.3d 136, 138 (2d Cir. 1998). The dismissal of a complaint is a legal conclusion which is subject to de novo review. Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) ("We review de novo a district court's dismissal of a complaint for lack of standing."); see also Raine v. Lorimar Prods., Inc., 71 B.R. 450, 452 (S.D.N.Y. 1987) ("Because this is an appeal from [a Bankruptcy Court's] decision on a motion to dismiss for failure to state a claim, purely legal considerations are involved, and thus this court's review must be de novo."). When reviewing such a dismissal, a court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." ATSI Commcn's, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Generally, "[a] bankruptcy court's denial of a request to amend [the complaint] is reviewed for abuse of discretion." In re Calpine Corp., 406 B.R. 463, 472 (S.D.N.Y. 2009) (citing In re Enron Corp., 419 F.3d 115, 124 (2d Cir. 2005)). However, "[i]f that denial was based on an interpretation of law," such as the determination that an amendment would be futile, a court employs de novo review. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002); see also Ricciuti v. N.Y. City Transit Auth., 941 F.2d 119, 122-24 (2d Cir. 1991) (reviewing de novo the lower court's determination that amendment

would be futile).

A court "should freely give leave [to amend the Complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Particularly where a court grants a motion to dismiss, "the usual practice is to grant leave to amend." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999). A court may deny leave to amend as futile only "if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 258 (2d Cir. 2002). Indeed, futility means that it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quotations and citations omitted).

## II. Claims Against LBSF: Counts One & Two

Plaintiffs appeal the dismissal of their direct claims against LBSF and the denial of leave to replead those claims derivatively. This Court addresses Count Three of the Complaint separately for the reasons articulated in Section IV, infra.

### a. Direct Claim Against LBSF

Plaintiffs appeal the Bankruptcy Court's dismissal of their direct claims against LBSF on two principal grounds: (1) Plaintiffs have standing under English law to sue LBSF directly because LBSF is a co-beneficiary under the trust; and (2) the Bankruptcy Court's reliance on the provisions of the trust deeds prohibiting non-parties from enforcing the deeds' terms was misplaced. Because Plaintiffs lack standing under English law to bring a direct claim against LBSF, this Court need not address Plaintiffs' second contention.

Under English law, a trustee generally has "a duty to protect and preserve the trust

estate for the benefit of the beneficiaries . . . ." Alsop Wilkinson v. Neary, [1996] 1 W.L.R. 1220, 1224 (Ch.). As such, "[n]ormally [it is] the trustee who has a right of action [and] is the proper person to enforce [the trust]." Hayim v. Citibank NA, [1987] A.C. 730, 733 (P.C.); see also Alsop, 1 W.L.R. at 1224 ("Trustees have a duty to . . . represent the trust in a third party dispute."). Plaintiffs seek to circumvent this general principle by invoking the so-called "beneficiaries dispute" theory. Under that theory, "where the dispute is between rival claimants to a beneficial interest in the subject matter of the trust, . . . the duty of the trustee is to remain neutral and . . . leav[e] it to the rivals to fight their battles." Alsop, 1 W.L.R. at 1225. Plaintiffs argue this theory applies here because LBSF persuaded the Bankruptcy Court that it is a beneficiary rather than a third party under the trust.

As a threshold matter, Plaintiffs mischaracterize the Bankruptcy Court's ruling. The Bankruptcy Court did not describe LBSF as a trust beneficiary. Instead, relying on Gregson v. HAE Trs. Ltd., [2008] EWHC 1006 (Ch.), the Bankruptcy Court found that the Trustee was the appropriate party to bring an action on behalf of the trust beneficiaries. In Gregson, a trust beneficiary brought suit against the director of a corporate trustee for impairment of trust property. The beneficiary argued that a corporate trustee's claims against its directors are held for the trust's beneficiaries, thereby empowering them to sue directly. Gregson, EWHC 1006 at ¶¶ 9, 22. The Gregson court rejected this notion and described the general rule that "a director of a trustee company does not owe a fiduciary duty to the beneficiary of the trust," and absent that duty, a trust beneficiary has no direct claim against the director. Gregson, EWHC 1006 at ¶¶ 44, 56, 69.

As the Gregson analysis illustrates, the core inquiry is whether the potentially

liable third party owed a duty to the trust's beneficiaries. See Gregson, EWHC 1006 at ¶¶ 44, 46, 57-58 (stating that if a direct claim against the directors was valid, it would "circumvent the clear and established principle that no direct duty is owed by the directors to the beneficiaries"); see also Roberts v. Gill & Co, [2010] UKSC 22, ¶¶ 46, 110 (S.C.) (beneficiary sought to amend to bring a derivative claim where it was "accepted that a claim that the [third parties] owed a duty of care to the beneficiaries would be difficult to sustain"). While LBSF is a party to the trust deeds, Plaintiffs do not allege the existence of any fiduciary relationship between themselves and LBSF. Accordingly, the Bankruptcy Court properly held that Plaintiffs lack standing under English law to sue LBSF directly.

b. Derivative Claims Against LBSF

The Bankruptcy Court also concluded that re-pleading derivative claims against LBSF would be futile because Plaintiffs cannot allege the existence of special circumstances. In making this determination, the Bankruptcy Court considered Plaintiffs' allegations that the Trustee failed to bring suit against LBSF and that an HSBC entity filed a proof of claim in the Lehman Bankruptcy.

Under English law, a trust beneficiary may bring a derivative suit against a third party when "special circumstances" are present. The "special circumstances" rule, articulated in Hayim v. Citibank NA, provides:

> [A] beneficiary has no cause of action against a third party save in special circumstances which embrace a failure, excusable or inexcusable, by the trustees to the beneficiary to protect the trust estate or to protect the interests of the beneficiary in the trust estate.

Hayim, A.C. 730 at 748. The Supreme Court of the United Kingdom recently addressed the

"special circumstances" rule and summarized the relevant authorities as follows:

> The special circumstances which were identified in the earliest authorities as justifying a beneficiary's action were fraud on the part of the trustee, or collusion between the trustee and the third party, or the insolvency of the trustee, but it has always been clear that these are merely examples of special circumstances, and that <u>the underlying question is whether the circumstances are sufficiently special to make it just for the beneficiary to have the remedy</u>.

Roberts, UKSC 22 at ¶¶ 46, 110 (emphasis added). The Supreme Court of the United Kingdom noted that a court has "wide latitude in evaluating . . . special circumstances," taking into account "all [of] the relevant circumstances." Roberts, UKSC 22 at ¶¶ 76, 78, 114.

Through the prism of these English law principles, this Court concludes that the Bankruptcy Court erred in finding that Plaintiffs cannot allege special circumstances. Despite representations in the Minibonds prospectuses that neither Lehman Brothers nor any of its subsidiaries exercised control over the Issuer, Lehman Brothers designed the Minibonds program and directed the Issuer's activities. As a party to the trust deeds, LSBF was substantially involved in that process. The Issuer then created a trust that, in certain circumstances, distributes its only collateral to a <u>Lehman</u> entity, rather than the trust's <u>sole</u> beneficiary. Juxtaposed against the promise that the Minibonds would be secured by highly-rated collateral, this is an odd result. See <u>Royal Brunei Airlines Sdn Bhd v. Tan</u>, [1995] 2 A.C. 378, 386-87 (P.C.) ("If, for his own purposes, a third party deliberately interferes in that relationship by assisting the trustee in depriving the beneficiary of the property held for him by the trustee, the beneficiary should be able to look for recompense to the third party as well as the trustee."); see also <u>Roberts</u>, UKSC 22 at ¶¶ 46, 110 ("[T]he underlying question is whether the circumstances are sufficiently special to make it just for the beneficiary to have the remedy."); <u>In re Field</u>, [1971] 1 W.L.R. 555, 561

(Ch.) (holding that special circumstances existed and "justice require[d] that the plaintiff, who is the only other person interested [in the property], should be allowed to have [his claim] properly tried before a court"). Furthermore, the recently released Examiner's report reveals cooperation between HSBC and Lehman Brothers at the highest levels during Lehman Brothers' collapse. Given the totality of these circumstances, this Court cannot find that it is "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] amended claims." Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999).

On appeal, the parties advance arguments concerning the operation of the trust deeds' payment priority provisions and potential class certification problems caused by a settlement arranged by Hong Kong regulatory authorities. While interesting, these arguments are extraneous to the issue of standing; they concern the merits of Plaintiffs' claims and are not before this Court on appeal. At this stage of the litigation, Plaintiffs should be permitted to replead Counts One and Two as derivative claims against LBSF. The Bankruptcy Court's denial of leave to replead is reversed.

## III. Claims Against the Trustee: Counts One & Two

Plaintiffs also contend that the Bankruptcy Court erred in denying leave to amend the Complaint to name HSBC Bank as the Trustee. The Bankruptcy Court held that amending the Complaint would be futile for the reasons set forth in its ruling, but did not articulate those reasons.

As an initial matter, the Bankruptcy Court's analysis of English case law ignored the differences between Plaintiffs' relationship with the Trustee and Plaintiffs' relationship with

LBSF and the other dismissed entities. Under English law, "the basic right of a beneficiary is to have the trust duly administered in accordance with the provisions of the trust instrument . . . and the general law." Target Holdings Ltd. v. Redferns, [1996] 1 AC 421, 434 (H.L.). When a trustee unlawfully administers the trust, a trust beneficiary may sue the trustee directly. See Hayim, A.C. at 735 ("The beneficiaries have a right to enforce the trust directly against the . . . trustee."); Bartlett v. Barclays Bank Trust Co. Ltd., [1980] 2 W.L.R. 430, 444, 452 (Ch.) (holding a trustee liable to the trust beneficiaries for willful "breach of trust"); see also Target Holdings, 1 AC at 437 ("A trustee who wrongly pays away trust money . . . commits a breach of trust and comes under an immediate duty to remedy such breach."). The Bankruptcy Court held that the trustee is the proper party to bring suit on behalf of a trust beneficiary. While that may explain Plaintiffs' lack of standing to sue LBSF directly, it does not resolve the issue of whether a beneficiary has standing to sue his trustee. Indeed, Counts One and Two are premised on alleged breaches of contract and fiduciary duty by the Trustee for failing to distribute the Saphir Notes to Plaintiffs.

The standing provisions of the trust deeds provide that a non-party to the trust has no right under the Contracts Act of 1999 to enforce any of the deeds' terms. While the Bankruptcy Court held that these provisions fit squarely within English law, it merely quoted the provisions without analyzing their language or the statute on which they rely. Notably, the Contracts Act of 1999 allows a non-party to a contract to enforce the contract's terms if they "purport[] to confer a benefit on him," Contracts Act of 1999, c. 31, § 1 (U.K.), but expressly states that it does not "affect any right or remedy of a third party that exists or is available apart from th[e] Act." Contracts Act of 1999, c. 31, § 7. Thus, while the trust deeds deprive Plaintiffs

of rights derived from the Contracts Act of 1999, Plaintiffs may hold rights outside of the Act, an issue the Bankruptcy Court did not consider.

Finally, the Bankruptcy Court's rationale for dismissing Counts Four through Thirteen fails to render futile an amended complaint naming the correct trustee. The Bankruptcy Court reasoned that these counts involve questions of foreign law which will have no effect on the rights of debtors or creditors in the underlying bankruptcy. The applicable rule is that "[a] proceeding is 'related to' a [bankruptcy] case . . . if the outcome might have a 'conceivable effect' on the estate." In re New 118th LLC, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (citing In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992)). A conceivable effect is one which "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." In re New 118th LLC, 396 B.R. at 890 (citing In re Pacor, Inc., 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134-35 (1995)). In this case, Plaintiffs seek to prevent the transfer of the Saphir Notes—worth $1.6 billion—to the bankruptcy estate. The effect of $1.6 billion on the bankruptcy estate is self-evident. Moreover, by instructing the Trustee to postpone distribution of the Saphir Notes, LBSF—not Plaintiffs—tethered the Saphir Notes to the Lehman Bankruptcy. Accordingly, the Bankruptcy Court's denial of leave to replead Counts One and Two against the Trustee is reversed.

IV. Constructive & Resulting Trust Claims: Count Three

In Count Three of the Complaint, Plaintiffs seek to impose a constructive or

resulting trust on the Minibonds collateral. While the Bankruptcy Court made a passing reference to these claims, it provided no analysis in its ruling. Understandably, the Bankruptcy Judge was juggling a host of complex and urgent issues. Nonetheless, this Court cannot discern why the constructive and resulting trust claims were dismissed. See In re Gucci, 309 B.R. 679, 685 (S.D.N.Y. 2004) ("This Court . . . has no way of knowing whether and to what extent the defense or elements thereof were rejected as a matter of law, [and] the reasons for any such rejection . . . ."). A constructive trust relies on equitable, as opposed to contractual and formal trust, principles. See, e.g., Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir. 1999) ("A constructive trust is an equitable remedy . . . [whose] purpose is to prevent unjust enrichment."). Without some analysis of why standing principles derived from the trust deeds' and English law apply to claims for a constructive or resulting trust, denial of leave to replead Count Three against both the Trustee and LBSF was inappropriate. See Pangburn, 200 F.3d at 70 (denial of leave to replead is warranted only when it is "beyond doubt that the plaintiff can prove no set of facts in support of [the] amended claims"). Moreover, it is not evident whether these claims are governed by English law, an issue the Bankruptcy Court did not address. Accordingly, the Bankruptcy Court's dismissal of Count Three is vacated and remanded for further consideration.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's dismissal of Counts One and Two against LBSF is affirmed, and its denial of leave to replead those claims derivatively against LBSF is reversed. The Bankruptcy Court's denial of leave to replead Counts One and Two against the Trustee is reversed. The Bankruptcy Court's dismissal of Count Three is vacated. This action is remanded to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order.

Dated: August 9, 2010
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111
*Counsel for Appellants*

Howard Grant Sloane, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, NY 10005
*Counsel for the HSBC Appellees*

Richard W. Slack, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
*Counsel for Appellee Lehman Brothers Special Financing, Inc.*

David S. Cohen, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, NW
Washington, DC 20006
*Counsel for Intervenor Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. et al.*